UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                                                  :
                                                                              :           Chapter 11
7TH AVENUE RESTAURANT GROUP      :           Case No. 07-11522(SMB)
HOLDINGS, LLC and 7TH AVENUE          :                          07-11523(SMB)
RESTAURANT GROUP, LLC,                          :
                                                                              :
                        Debtors.                               :
------------------------------------------------------X

### MEMORANDUM DECISION EXPUNGING
### PROOF OF INTEREST NO. 18

**A P P E A R A N C E S:**

RATTET, PASTERNAK & GORDON OLIVER, LLP
Attorneys for Debtors
550 Mamaroneck Avenue
Harrison, New York 10528

    Robert Rattet, Esq.
    James B. Glucksman, Esq.
        Of Counsel


KERR & RICHARDS
Attorneys for 7th Avenue Restaurant
  Management Group LLC
14 Wall Street—20th Floor
New York, New York 10005

    William B. Kerr, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

      7th Avenue Restaurant Management Group LLC ("Management") filed proof of interest no. 18 asserting that it held a 19.625% equity interest ("Membership Interest") in the debtor 7th Avenue Restaurant Group, LLC ("Restaurant Company"). The other debtor, 7th Avenue Restaurant Holdings Group, LLC ("Holdings"), holds the remaining

Membership Interest. The debtors moved to expunge the proof of interest, contending that Management's Membership Interest was extinguished when Holdings terminated Management's role as manager of the Restaurant Company.

The outcome depends on the interpretation of the parties' agreement, described below. The Court initially ruled that the relevant provision was ambiguous, and conducted a trial to resolve the ambiguity. As a result of the trial, the Court now concludes that there is only one reasonable interpretation of the relevant provision, and under that interpretation, Management's Membership Interest has been extinguished.

## BACKGROUND

### A.     Introduction

The underlying facts have been set forth in the Court's June 4, 2007 post-trial bench decision, familiarity with which is assumed. On or about September 1, 2006, Holdings and Management entered into an Operating Agreement of 7th Avenue Restaurant Group LLC (the "Agreement"). (Debtors' Exhibit ("DX") 1.) The Agreement related to the formation of the Restaurant Company, an entity that was to own and operate two restaurants in Manhattan. Holdings and Management received Membership Interests in the Restaurant Company of 33 ⅓% and 66 ⅔%, respectively.

In a nutshell, Holdings provided the financing, and Management provided "sweat equity." Management was designated as "Manager" of the restaurants, overseeing their construction and eventual day-to-day operations. Holdings initially provided $600,000 in financing, but through a series of amendments to the Agreement, ultimately invested $965,000. Each time Holdings invested additional money, it diluted Management's

2

Membership Interest (and increased its own) in accordance with a formula in the amendments.

Holdings had certain rights to terminate Management, as Manager, and any termination drastically affected Management's equity. If Holdings terminated Management for cause, Management forfeited its entire Membership Interest. (DX 1 at § 7.4(a).) If Holdings terminated Management other than for cause under § 7.4(b) of the Agreement, Management's Membership Interest was reduced in accordance with a formula (the "Formula") discussed below.

On April 23, 2007, Holdings terminated Management, as Manager, without cause, in accordance with § 7.4(b) of the Agreement. By that time, Management's Membership Interest had been reduced to 41.25%. On May 18, 2007, Holdings and the Restaurant Company filed these chapter 11 petitions. On August 24, 2007, Management filed proof of interest no. 18 in which it asserted a surviving 19.625% Membership Interest in the Restaurant Company. The debtors objected to the proof of interest, contending that Management's Membership Interest was wiped out under the Formula when it was terminated as Manager.

**B.     Section 7.4(b) of the Agreement**

The extent of Management's Membership Interest is governed by Section 7.4(b), which states in pertinent part:

> In the event that the Manager is removed pursuant to Section 7.4 (b), the Manager shall retain Membership Interest in the Company according to the following formula: the Manager's Membership Interest upon removal shall be the Manager's Membership Interest immediately prior to removal divided by 2, then further reduced by the quotient of the total Unreturned Capital Contributions on the date of removal divided by the total of all

> Capital Contributions received by the Company through the date of removal, or, expressed in mathematical terms, Membership Interest upon removal = (Membership Interest prior to removal / 2) * (1 - (total Unreturned Capital Contributions / all Capital Contributions)).

The Formula at the end of the quotation is expressed in two ways, in narrative form and as an equation. Both versions begin by reducing Management's existing Membership Interest by half. I refer to this as the 50% penalty. At the time of Management's termination as Manager, it held a 41.25% Membership Interest. As a result of the 50% penalty, the Membership Interest was automatically reduced to 20.625%. Both sides agree up to this point

The second part of the Formula calls for an additional reduction. The narrative version states that the remaining 20.625% must be reduced by a "quotient," computed by dividing the amount of the Unreturned Capital Contributions on the date of the removal by the total amount of the Capital Contributions. On April 23, 2007, the Unreturned Capital Contributions, the numerator, equaled $965,000. This was the amount of Holdings' unreturned investment. The Denominator was also $965,000, the total amount that Holdings had invested. Expressed as a fraction, the "quotient" is $965,000 divided by $965,000, or one. The proof of interest computed Management's equity by subtracting one from 20.625%, yielding a Management's Membership Interest of 19.625%.

The mathematical equation leads to a different result. After reducing the Membership Interest by 50%, the remaining interest must be multiplied by another number. That other number is computed by subtracting the same "quotient" from one.

4

When applied to the facts of this case, it yields a Management Interest of zero according to the following calculation:

*Management Interest = 20.625% * (1 minus $965,000/$965,000).*

The parenthetical is equal to zero, and any number multiplied by zero results in a product of zero. More fundamentally, unless Management has made its own Capital Contribution, the equation will always strip Management's entire equity interest if Holdings terminates Management without cause before any portion of Holdings investment has been repaid. This is the interpretation advocated by Holdings.

Because the narrative version and the equation lead to different results,[1] the Court ordered a trial to resolve the ambiguity.

**C.    The Trial Evidence**

Four witnesses testified at trial, two per side. Keith Goggin, a member of Holdings, participated in the negotiation and drafting of the Agreement, and testified about the purpose of the Formula. According to Goggin, the Formula was intended to wipe out Management's equity if it was terminated as Manager before any capital was returned to Holdings. It was a "hammer lock," designed to stimulate Management's two members, Robert Meller and Craig Wilson, to run a successful restaurant and return some capital to Holdings.

Goggin also testified that he discussed the Formula with Meller and Wilson. During these discussions, Wilson expressed his concern that Holdings could terminate

---

[1]    In addition, the narrative called for subtraction while the equation involved multiplication. Furthermore, the equation required the subtraction of the "quotient" from the number one, a calculation not mentioned in the narrative.

Management and take its stake, and Goggin confirmed Wilson's worst fears. Charlene Goggin, Keith Goggin's wife, testified that although she was not an active participant in the deal, she was present when her husband, Meller, and Wilson discussed the deal at the Goggin home. She heard Keith mention the possibility that they (Meller and Wilson) could lose management of the restaurants "and everything."

Meller and Wilson gave different accounts. Meller said that Goggin had told him that if Holdings terminated Management, its Membership Interest would be halved as a penalty. Meller's testimony implied that this was the only penalty mentioned by Goggin. Wilson admitted that he was "horrible with math," did not understand how § 7.4(b) worked, and did not recall any specific discussions, particularly about equity dilution in the event of termination. Both testified that they would not have agreed to the partnership with Holdings if they knew that Holdings could dismiss them and wipe them out.

## DISCUSSION

The parties' dispute involves an issue of contract interpretation that is subject to familiar rules. The primary objective is to give effect to the parties' intent. Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993); Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992). Where the parties' intent is not plain from the language they used, a court may look to the objective manifestations of intent gathered from the parties' words and deeds. Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp., 361 N.E.2d 999, 1001 (N.Y. 1977); Nycal Corp. v. Inoco PLC, 988 F. Supp. 296, 301 (S.D.N.Y. 1997). "The secret or subjective intent of the parties is irrelevant." Klos v. Polskie Linie Lotnicze, 133 F.3d

6

164, 168 (2d Cir. 1997). A court may reject unreasonable interpretations. See Rush v. Rush, 244 N.Y.S.2d 673, 675-76 (N.Y. App. Div. 1963). Finally, a Court may construe an ambiguity against the drafter under the doctrine of contra proferentem, but the rule is one of last resort, and applies after all other aids to interpretation have been exhausted. O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc., 37 F.3d 55, 61 (2d Cir. 1994); Record Club of Am. Inc., v. United Artists Records, Inc., 890 F.2d 1264, 1271 (2d Cir. 1989); Schering Corp. v. Home Ins. Co., 712 F.2d 4, 10 n.2 (2d Cir. 1983).

The issue before the Court is which of the two versions of the Formula correctly expresses the parties' intent. Both versions reduce Management's Membership Interest in excess of 50%. Thus, Meller's testimony that Goggin only mentioned a 50% penalty is not credible, but in any event, is belied by a cursory reading of the Agreement.[2] Wilson did not recall any discussions. Furthermore, their self-serving testimony of an unspoken unwillingness to sign an agreement that does what Holdings says it does is not relevant. They signed an Agreement that reduced Management's Membership Interest by more than 50% pursuant to a Formula that they apparently did not understand, or seek to understand. They agreed to the reduction, and the sole question is which version of the Formula accurately expresses that agreement.

I conclude that the mathematical equation in § 7.4(b), which stripped Management of its remaining Membership Interest, is the only reasonable construction of

---

[2] Management's lawyer tried to paint Meller as unsophisticated in business matters, and no match for Goggin. Meller earned an MBA in Finance from Baruch College (not from Columbia University, as his biography stated (see DX 8)). In addition, he worked in investment banking and private equity before beginning a successful career in the restaurant industry. (Id.) By contrast, Goggin held a masters degree in journalism from Columbia University. Having observed Meller testifying, I am satisfied that he is an intelligent person capable of understanding the agreements that he signs.

7

the Agreement. As Goggin explained, Holdings was investing all of the money needed to build and run the restaurants, and Management was entitled to a nonrefundable distribution each week in the sum of $2,000. (DX 1 at § 7.2.) Thus, Management was entitled to receive a return on its "sweat equity" regardless of whether the Restaurant Company was paying or could pay a distribution to Holdings.

Under the circumstances, it was reasonable for the Agreement to provide that if Management burned through Holdings investment and failed to return any of it, Holdings could eliminate its "sweat equity," and perhaps, find another partner. The Formula incentivized Management to return equity to Holdings as quickly as possible, and thereby render a portion of its Membership Interest inextinguishable. I credit Keith Goggin's testimony that he and Wilson discussed this matter in Meller's presence, and conclude they understood (or should have understood) the implications of the Formula, and how it was supposed to work.

Furthermore, the correct application of the narrative portion of the Formula also wipes out Management's equity; Management misapplied the Formula in its proof of interest by ignoring the distinctions between fractions, decimals and percentages. As a first step, the narrative version, like the equation, imposes the 50% penalty, and all agree that this reduced Management's Membership Interest to 20.625%. The next step in the narrative version reduces that 20.625% by an amount equal to the "quotient." The "quotient" is $965,000 divided by $965,000, and can be expressed as a fraction (one divided by one), as a decimal (1.0), or as a percentage (100%). To avoid mixing apples and oranges, Management should have subtracted a percentage (100%) from its 20.625% interest, or a decimal from its interest expressed as a decimal (.20625 minus 1.0) or a

8

fraction from its fractional ownership (20.625/100 minus 100/100). Not surprisingly, the result is the same in each case, and that result is negative equity. Instead, Management's proof of interest subtracted a decimal (1.0) from a percentage (20.625%) without explaining why the parties would have intended such an arbitrary result.

In truth, the narrative version of the Formula is a poorly drafted attempt to describe the equation, as its literal application leads to absurd results that the parties could not have intended. As noted, it leaves Management with negative equity in this case. Goggin showed that even if Management had returned 50% of Holdings investment prior to the termination, its equity would still be negative. In fact, Management would not have achieved positive equity unless it had returned approximately $766,000 to Holdings.[3] This contravenes the goal of creating an inextinguishable Membership Interest once Membership returned a portion of Holdings' investment.

Accordingly, the Court concludes that the narrative version of the Formula is an inartful and inaccurate attempt to state the equation, as its literal application leads to absurd results that could not have been intended by either party. Instead, the equation accurately reflects how Management's Membership Interest should be calculated. Since the evidence shows that there is only one reasonable interpretation of the Formula, and that Management's proffered interpretation leads to absurd results, it is unnecessary to resort to the rule of <u>contra proferentem</u>. The application of the mathematical equation in

---

[3] Management's Membership Interest would become positive when the "quotient" was less than Management's Membership Interest after applying the 50% penalty, or .20625. The "quotient" is computed by dividing the Unreturned Capital Contributions by the total Capital Contributions. The denominator is $965,000. The "quotient" will be .20625, and Management's equity will be zero (not negative), when the numerator equals $199,031.25. Any further reduction in the numerator, through the return of more of Holdings' investment, will result in positive equity.

9

§ 7.4(b) results in the extinguishment of Management's remaining Membership Interest. Accordingly, the motion to expunge and disallow its proof of interest is granted.

The foregoing constitutes the Court's findings of fact and conclusions of law. Settle order on notice.

Dated: New York, New York
December 12, 2007

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Judge